## COURT OF APPEALS.

John Brower and Jacob Cram, appellants, agt. Enoch W. Peabody, respondent.

Where goods were contracted to be sold for a specified sum—*cash upon delivery*—and were, in pursuance of the agreement to sell, delivered on board of a vessel, and receipts in the usual form were given by the officer of the vessel, stating that they had been received from the seller; and the purchaser subsequently (on the same day) stole the receipts from the seller, and procured a bill of lading from the owners of the vessel in his own name, drew a bill of

exchange against the shipment, assigned it to a third person, who, in good faith, advanced a large sum of money upon it; and the master of the vessel, on demand, refused to recognize the right of the seller to the goods, and refused to deliver them to him, but disposed of them in Liverpool, by the orders of other persons,

*Held*, in an action by the seller against the master of the vessel, that there was no delivery of the property; the seller never parted with the possession; he placed the goods on shipboard in his own name, and took and retained in his custody the receipts furnished by the defendant, which gave him the control of the property, and bound the defendant to execute, or withhold the bill of lading according to his direction.

The *onus* devolved upon the defendant to establish a legal right to interfere with the property, without the consent and against the wishes of the seller and owner.

The act of the purchaser, through which the defendant was compelled to make title, was a *felony*. The receipts, although recognized as *prima facie* evidence of property in the thing receipted, in those who have them in possession, do not, like bank notes, become the property of a *bona fide* holder.

The defendant converted the property; and this act, apparently unauthorized and tortous, he justified under *evidences of title stolen* from the possession of the owners. The defendant, to release himself from liability, should show affirmatively a transfer of the property in bar of the action. (*This decision overrules the same case, reported* 10 *How. Pr. R.* 125.)

*October Term, 1855.*

THIS was an action brought by the appellants against the respondent under the following circumstances, as found from the evidence in the case, viz.: On the 7th of October, 1850, Brower, on behalf of himself and Cram, made an agreement with Lovett & Co., to sell them fifty casks of potashes for $1,657.08, to be paid for—*cash on delivery*. Lovett & Co. were then insolvent, and unable, and did not intend, to pay for them; that immediately after making the agreement, Lovett went to the office of Charles H. Marshall & Co., owners of the ship *Fidelia*, of which the respondent was master, and which was then up for a voyage to Liverpool, and engaged freight for said casks, in pursuance of the agreement to sell.

The appellants sent by their cartman and put on board said ship the casks, and took from the mate receipts in the usual form of ships' receipts, thirty-eight of which stated them to have been received from said Brower; and as to twelve of the

casks, the receipts did not state from whom they were received. The delivery on board was completed on the morning of the 9th of October, 1850; and about 10 or 11 o'clock in the forenoon, the carman took all the receipts to Brower's office, and laid them on a desk at which Brower was writing; at about the same instant, Lovett entered the office, and stole and carried away said receipts, and in the course of the same day he presented them at the office of the said ship, and procured a bill of lading for the casks in his own name, drew a bill of exchange against the shipment, and assigned the bill of lading to Richard Hasluck, who advanced to him, in good faith, upon such security, 1,453.33.

The respondent and the owners of the ship, and said Hasluck, all acted in good faith in the said matter, and had no reason to suspect any fraud on the part of Lovett, and had no notice of such fraud until several days after the bill of lading had been delivered, and the money so advanced. Brower's office was at the corner of Water-street and Coenties-slip, and the ship lay at the foot of Beekman-street, and Marshall & Co.'s office was at No. 38 Burling-slip, in the city of New-York.

Brower, as soon as he discovered the absence of his receipts, went in pursuit of Lovett, and found him on the 11th of October, and then demanded payment of his goods, or that he should give them up, which he refused.

It was proved that it is the uniform custom among those engaged in the shipping business in the city, to deliver bills of lading to any person who produces the ship's receipts, without reference to the names in them, or without endorsement of the same; it being regarded by such custom merely as *memoranda* by which to make out the bills of lading, and as acknowledgments that the goods are on board. The cause was referred to Lucius Robinson, Esq., as referee, who reported and found the foregoing facts, and gave judgment against the appellants, on the ground that they must be presumed to have known such custom, and were chargeable with unreasonable negligence in not giving immediate notice to the respondent, or to the owners or agents of the ship, of the taking of the receipts by Lovett.

An appeal was taken to the general term of the supreme court, where the judgment was affirmed by Justices CLERKE and ROOSEVELT,—(MITCHELL, Justice, dissenting,)—(*reported* 10 *Howard's Pr. R.* 125,) with costs; from which judgment of affirmance an appeal was taken to the court of appeals, and the case argued on the second day of July last, before seven judges of that court, and on the 12th day of October last, said judgment was reversed by the whole court.

FRANCIS BYRNE & JAMES W. GERARD, *for appellants.*
SAMUEL BEARDSLEY, *for respondent.*

By the court—GARDINER, Ch. J. There was no delivery of the property, the subject of this suit, to Lovett & Co., the fraudulent purchasers. The terms of the contract were, *cash upon delivery;* and there is no allegation or proof that the agreement was modified, or changed in the slightest particular; under the agreement, as the referee finds, the fifty barrels of potashes were delivered, *not to the purchasers, but on board the ship* of which the defendant was master, and receipts taken, as the answer alleges, in the name of the plaintiff.

The answer of Peabody states,—

"That the receipts so given contained a statement of the receipt, in good order, from the said John Brower, on board the ship *Fidelia*, of the said fifty casks of potashes, describing them by their marks; and in reference to the usage, he avers that the receipts for the goods and merchandise, so delivered on board such ship, are given by the master of the ship or his agent, to the person delivering the same; and that bills of lading are not given to the individuals who have engaged freight therefor, nor to any other person, except on the production or surrender of said receipts to the master or his agent; and upon such production and surrender, bills of lading are forthwith given."

Looking at the acts of the plaintiff in the light of the contract, and the custom thus established, it is manifest there was no intention to deliver the property to Lovett & Co., and that

Brower and Cram agt. Peabody.

the owners never for an instant parted with the possession of the ashes, but placed them on shipboard, in their own names, and took and retained in their custody the evidences of their title, furnished by the defendant, which gave them the absolute control of the property, and bound the ship's master to execute or withhold the bills of lading, according to their direction. To call this a delivery to Lovett & Co., or a general delivery, is a palpable misnomer.

Stopping here, we find the property in the ashes unchanged. They were subsequently demanded of the defendant, who refused to recognize the right of the plaintiffs, and disposed of them in Liverpool, by the orders of other persons. The *onus*, then, devolves upon the defendant to establish a legal right thus to interfere with the property of the plaintiffs, without their consent, and against their known wishes. He relies upon the fact, that the receipts were, on the same day, presented at the office of the owners of the ship by Lovett, who procured a bill of lading in his own name; and in the same sentence the referee also finds that the receipts were *stolen* by Lovett from the office of the plaintiffs. The act of Lovett, through which the defendant is compelled to make title, was a *felony*, for which he could have been indicted and convicted under the 66th section of the article " of Robbery, Embezzlement, and Larceny." (2 *R. S.* 679.)

If the custom or usage, which lies at the foundation of the defence is valid, the receipts were *property*, " and the value of the commodity affected or transferable by the instrument, would be deemed the value of the article so stolen." (*Id.* § 66.) An argument is unnecessary to prove that a title thus derived, cannot be urged to the prejudice of the true owner. The familiar principle is thus stated in *Saltus* agt. *Everett* (20 *Wend.* 279):—

" Property in things movable can only pass from the owner by his own act and consent, except in those cases only when such owner has, by his own direct voluntary act, conferred upon the person from whom the *bona fide* vendee derives title, the apparent right of property as owner, or of disposal as agent."

No fact is found or exists in this case to make it an exception to the general rule. The receipts, although recognized as *prima facie* evidence of property in the thing receipted in those who have them in possession, do not, it is presumed, enter into the currency, and, like bank notes, become the property of a *bona fide* holder.

It is said that *nothing but the receipts were stolen; the ashes were untouched.* The defendant converted the property; and this act, apparently unauthorized and tortuous, he justifies under *evidences of title stolen from the possession of the owners.* It seems to have been forgotten that the plaintiffs are not required to prove a negative, but the defendant must, in some way, show affirmatively a transfer of the property in bar of the action.

No reliance was placed upon the facts occurring subsequent to the conversion by the felony, by the learned counsel for the respondent. They can have no influence upon the decision. It may be true, as a matter of fact, what the referee seems to have found, as a conclusion of law, that the plaintiffs would have acted more wisely by giving immediate notice to the ship owners, instead of pursuing the thief, and reclaiming their property; but an error in judgment of this sort, if it was one, cannot divest them of their property, or create a title in the defendant.

The judgment should be reversed.